**Sean LEBO, Appellant,**

v.

**The STATE of Texas.**

**No. 839–02.**

Court of Criminal Appeals of Texas.

Nov. 27, 2002.

Robert H. Featherston, San Antonio, for appellant.

Edward Shaughnessy, III, Assist. DA, San Antonio, Matthew Paul, State's Attorney, Austin, for state.

*OPINION*

COCHRAN, J., delivered the opinion of the Court, joined by MEYERS, PRICE, WOMACK, JOHNSON, and HOLCOMB, JJ.

A jury convicted appellant of felony assault of an elderly person. It assessed a ten-year sentence, recommending that the judge place appellant on community supervision (probation) rather than send him to prison. Appellant filed a timely notice of appeal and requested interim release on bond, pending appeal. The trial judge denied appellant's request for release on bond, ruling that Texas Code of Criminal Procedure article 44.04(b) statutorily pro-

hibited him from granting appellant any bond pending appeal, because the jury had actually sentenced appellant to ten years' imprisonment, although it also recommended that the judge suspend that sentence and place appellant on probation.

Appellant then filed a separate, accelerated appeal of the order denying bail. The court of appeals, acknowledging that its "result might seem unfair," held that " 'punishment' as used to determine eligibility for bond pending appeal pursuant to art. 44.04(b) means the maximum term of confinement assessed" and therefore appellant was prohibited from release on an appeal bond.[1] The court of appeals, as well as the trial judge, focused solely upon the length of the possible term of imprisonment rather than upon whether appellant was sentenced to actual prison time or placed on community supervision/probation. We granted review to determine whether a person who is sentenced to ten years' imprisonment, but who is placed under community supervision, is entitled to bond pending appeal.

In this case of first impression, we must analyze the meaning of article 44.04(b) of the Code of Criminal Procedure as it was amended in 1999. The question before us is whether that statute now prohibits releasing a defendant on bond, pending appeal, if he has been assessed a sentence of ten years' imprisonment, but that sentence has been *suspended*, rather than *imposed*. We conclude that article 44.04(b) prohibits the setting of bail pending appeal only when the sentence of imprisonment is actually imposed and the defendant would, had he not appealed, be immediately incarcerated to serve his term of imprisonment. This interpretation accords with the plain language of the statute and ensures its constitutionality.

As usual, we begin with the plain language of the statute.[2] Our constitutional duty is to apply the words that the Legislature used in the statute.[3] But our "plain language" statutory interpretation must also analyze laws to avoid, when possible, constitutional infirmities.[4] With these principles in mind, we turn to the words of article 44.04(b):

> The defendant may not be released on bail pending the appeal from any felony conviction where the punishment equals or exceeds 10 years confinement or where the defendant has been convicted of an offense listed under Section 3g(a)(1), Article 42.12, but shall immediately be placed in custody and the bail discharged.[5]

---

1. *Lebo v. State*, 75 S.W.3d 591, 593 (Tex.App.-San Antonio 2002).

2. Under our approach to statutory interpretation, we look solely to the literal text of the statute for its meaning unless the text is ambiguous or application of the statute's plain language would lead to an absurd result that the legislature could not possibly have intended.
   *Fryer v. State*, 68 S.W.3d 628, 629 (Tex.Crim.App.2002); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

3. *See Boykin*, 818 S.W.2d at 785.

4. *State v. Markovich*, 77 S.W.3d 274, 282 (Tex.Crim.App.2002). In *Markovich*, this Court noted that

> Justice Holmes wrote long ago that "[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." We should follow this canon out of respect for our Legislature, "which we assume legislates in the light of constitutional limitations." This doctrine seeks "to minimize disagreement between the Branches by preserving ... [legislative] enactments that might otherwise founder on constitutional objections."
>
> *Id.* (footnotes omitted).

5. Tex.Code Crim. Proc art. 44.04(b) (Vernon Supp.2002).

The word "confinement" has many different meanings in the criminal justice system. Its first and most common meaning in ordinary English is "imprisonment."[6] That is also its first meaning in the law.[7] We have previously defined "confinement," for purposes of filing a post-conviction writ under article 11.07, as being in actual, physical custody.[8] A person who is granted community supervision is not actually confined or imprisoned to serve his sentence until and unless he violates the terms of community supervision.[9] The Legislature has explicitly stated that when a judge or jury grants community supervision, "a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part."[10] The threat of imprisonment dangles, like a Damoclean sword, over the probationer's head, but incarceration is not actually imposed; it is suspended. Thus, the plain language of the statute indicates that a trial judge is prohibited from releasing a person on bail pending appeal only if his punishment equals or exceeds ten years' actual physical confinement. Those persons whose sentences are suspended are not prevented from being released on bail pending appeal.

This "plain language" interpretation accords with the history of article 44.04 as well. Before its amendment, the statute read:

> The defendant may not be released on bail pending the appeal from any felony conviction where the punishment exceeds 15 years confinement or where the defendant has been convicted of an offense listed under Sections 481.107(b) through (e), Health and Safety Code, but shall immediately be placed in custody and the bail discharged.[11]

It is clear that, in the earlier version of the statute, the word "confinement" meant actual, physical imprisonment, because any defendant sentenced to fifteen years could not be placed on community supervision.[12]

---

**6.** *See* WEBSTER's NEW WORLD DICTIONARY 298 (2nd College ed.1970) ("confining or being confined; spec., a) imprisonment b) limitation; restriction; restraint c) childbirth; lying-in").

**7.** *See* BLACK's LAW DICTIONARY 270 (5th ed.1979) ("[s]tate of being confined; shut in; imprisoned. Confinement may be by either a moral or a physical restraint, by threats of violence with present force, or by physical restraint of the person").

**8.** *Ex parte Renier,* 734 S.W.2d 349, 351 (Tex. Crim.App.1987) ("[c]onfinement" means "in custody" for purposes of a writ of habeas corpus filed under art. 11.07; only a prisoner who was in actual, physical custody of state official could file post-conviction writ; other methods available for filing a writ when person was "restrained" but not in actual custody). In 1995, the Legislature amended article 11.07 to provide that "[c]onfinement means confinement for any offense or any collateral consequence resulting from the conviction that is the basis of the instant habeas corpus."

**9.** *See* TEX.CODE CRIM. PROC. art. 42.12, § 21.

**10.** TEX.CODE CRIM. PROC. art. 42.12, § 2(b).

**11.** TEX.CODE CRIM. PROC. art. 44.04(b) (amended, Acts 1999, 76th Leg., ch. 546, § 1, effective Sept. 1, 1999).

**12.** *See* TEX.CODE CRIM. PROC. art. 42.12, § 3(e)(1) & § 4(d)(1) ("[a] defendant is not eligible for community supervision under this section if the defendant ... is sentenced to a term of imprisonment that exceeds ten years"). These provisions have remained unchanged throughout the pertinent time period.

Act of May 24, 1995, 74th Leg., R.S., ch. 319, § 5, sec. 3(c), 1995 Tex. Gen. Laws 2764, 2771 (amended 1999) (current version at TEX. CODE CRIM. PROC. art. 11.07, § 3(c)). Thus, the Legislature is well aware of the general use of the word "confinement" and perfectly capable of expanding that definition when it deems it appropriate.

Similarly, those convicted under sections 481.107(b) through (e) were not eligible for community supervision.[13] Although the Legislature amended the statute in 1999 to prohibit the availability of bail pending appeal to those sentenced to ten years or more, rather than those sentenced to more than fifteen years, and to include all 3(g)(a)(1) offenders, rather than to simply repeat or serious drug offenders,[14] the Legislature carried forward its term "confinement" from the former provision. There is no reason to think that the Legislature intended any implicit change in the meaning of "confinement" within the same statute when it explicitly changed other words in the provision.

◼ Furthermore, this plain language interpretation avoids a challenge to the statute's enforceability. If article 44.04 were interpreted to prohibit those who are placed on community supervision for ten years from obtaining an appeal bond, the article might require the unconstitutional punishment of a person for exercising his legal right to appeal.[15] A person does not have a constitutional right to appeal a criminal conviction, but if state law does provide for appeal, then "a defendant's right of appeal must remain unfettered." [16]

---

**13.** Former Health and Safety Code sections 481.107(b) through (e) dealt with enhanced sentences for specified drug offenses in which a defendant had a prior felony drug conviction, thus making him ineligible for community supervision, and for certain specified drug offenses for which the minimum punishment was ten to fifteen years imprisonment for which a defendant would also be ineligible for community supervision. *See generally Ex parte Crouch*, 838 S.W.2d 252, 253 (Tex.Crim. App.1992) (holding that defendant is not entitled to bail on appeal either when he is a repeat offender under § 481.107(b)-(e) or when he is convicted of the offense of illegal drug investment under § 481.126(b)).

**14.** Section 3g(a)(1) offenses include: murder, capital murder, indecency with a child, aggravated kidnapping, aggravated sexual assault, aggravated robbery, and, again, certain repeat serious felony drug offenses. Tex.Code Crim. Proc. art. 42.12, § 3g(a)(1) (Vernon Supp.2002).

**15.** The constitutional issue concerning amended article 44.04(b) has already arisen in two courts of appeals. *See In re Duncan*, 62 S.W.3d 333 (Tex.App.-Houston [1st Dist.] 2001, orig. proceeding); *In re Beck*, 26 S.W.3d 553 (Tex.App.-Dallas 2000, orig. proceeding). This Court held that mandamus was not the proper remedy in *Beck*, but we did not address the merits of the Dallas Court of Appeals' holding, that amended article 44.04, if interpreted to require a person placed on community supervision to go to prison if he appealed, was unconstitutional. *See State ex. rel. Hill v. Court of Appeals for the*

*Fifth District*, 34 S.W.3d 924, 928 (Tex.Crim. App.2001) (stating that a writ of mandamus by court of appeals against trial court is unavailable even if the trial court's ruling concerns a question of pure law when that law is unsettled or uncertain; holding that trial court did not have a ministerial duty to declare article 44.04(b) unconstitutional).

**16.** *Ex parte Canada*, 754 S.W.2d 660, 667 (Tex.Crim.App.1988). In *Canada*, this Court discussed *Robinson v. Beto*, 426 F.2d 797 (5th Cir.1970), in which the Fifth Circuit stated that a state may not impose any penalty on a person for exercising a right of appeal and held that "[d]ue process requires that a state, once it establishes avenues of appellate review, must keep those avenues free of unreasoned distinctions that impede open and equal access to the courts." 426 F.2d at 798. In *Robinson*, the Fifth Circuit struck down the Texas statutory scheme which gave the trial court discretion to grant or deny jail-time credit accrued while a defendant was appealing his case. The Fifth Circuit reasoned that a defendant who does not appeal his conviction will immediately begin receiving time credit toward a completion of his sentence, but a defendant who appeals his conviction is basically at the mercy of the trial judge who had the discretion to grant or deny such time credits. This procedure "impede[s] open and equal access to appellate review since it may deter a defendant from appealing . . . ." *Id*. at 799; *see also Pruett v. Texas*, 468 F.2d 51 (5th Cir.1972), *aff'd and modified in part*, 470 F.2d 1182 (5th Cir.1973), *aff'd*, 414 U.S. 802, 94 S.Ct. 118, 38 L.Ed.2d 39 (1973) (holding that

As the Supreme Court has stated: "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'"[17]

Under the interpretation that the court of appeals has given to article 44.04(b), a defendant who is sentenced to ten years' imprisonment, but whose sentence is suspended, must nonetheless go to prison in order to appeal his conviction. The court of appeals reasoned that:

> The punishment for [appellant's] crime is the term of confinement, the sentence. Through the jury's clemency, [appellant's] sentence has been suspended, and he may, if he complies with the conditions of his probation, avoid the confinement assessed. Nevertheless, we hold that 'punishment' as used to determine eligibility for bond pending appeal pursuant to art. 44.04(b) means the maximum term of confinement assessed.[18]

The court concluded that, "[b]ecause the punishment assessed by the jury in this case equals ten years confinement, [appellant] is not eligible for bond pending appeal."[19] The effect of this interpretation is to punish the defendant who appeals. Those who are placed on ten years community supervision and do not appeal do not go to prison until and unless they violate the terms of their probation. Those who *do* appeal must immediately go to prison and begin serving a sentence which the jury had explicitly suspended. Thus, a defendant must choose between keeping his freedom and foregoing his statutory right to appeal or losing his freedom and possibly losing his appeal as well.

■ Under the court of appeals' interpretation of article 44.04(b), for those probationers placed on ten years' community supervision, the price to appeal is prison. But, under the Fourteenth Amendment, "[t]he right to appeal any conviction or the decision of any court is a sacred right that must remain free, open and unfettered and without fear, threats or penalty."[20] Thus, the court of appeals' interpretation of article 44.04(b) would raise grave doubts concerning the constitutionality of the statute.[21] While we cannot rewrite a statute,

---

a defendant must be granted accumulated good time acquired while an appeal is pending and noting that "penalizing those who choose to exercise constitutional rights 'would be patently unconstitutional'.... And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to 'chill the exercise of basic constitutional rights'") (citations omitted).

**17.** *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (citation omitted).

**18.** *Lebo,* 75 S.W.3d at 593. The court of appeals did not err in its discussion of the word "punishment" as used in article 44.04(b). Indeed, it is correct that, under our previous decisions, the term "punishment" used in this context means the maximum term of confinement assessed. *See Daniel v. State,* 623 S.W.2d 411, 412 (Tex.Crim.App. 1981); *Ex parte McBride,* 108 Tex.Crim. 618,

618–19, 2 S.W.2d 267, 267 (Tex.Crim.App. 1928). Because the parties did not focus upon the term "imprisonment," it is understandable that the court of appeals did not analyze the crucial distinction between a person who is sentenced to actual confinement versus one whose term of confinement has been suspended.

**19.** 75 S.W.3d at 593.

**20.** *Pruett,* 468 F.2d at 55.

**21.** *See Goodwin,* 457 U.S. at 372, 102 S.Ct. 2485; *North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) ("This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts"; noting that "[a] court is 'without right to ...

courts should seek to interpret statutes such that their constitutionality is supported and upheld.[22]

■ In sum, we conclude that the plain language, logic, and history of article 44.04(b) support its clearly constitutional meaning, that those who are sentenced to ten years' actual imprisonment are not entitled to bail pending appeal, while those who are placed on ten years' community supervision may seek release on bail pending appeal. Therefore, we reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings consistent with this opinion.

KELLER, P.J., and KEASLER, J., concurred in the result.

HERVEY, J., not participating.

put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. . . .' It is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice") (quoting *Worcester v. Commissioner,* 370 F.2d 713, 718 (1st Cir. 1966)).

22. *Luquis v. State,* 72 S.W.3d 355, 365, n. 26 (Tex.Crim.App.2002); *see also* TEX. GOV'T CODE § 311.021 ("[i]n enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is

intended"); *Proctor v. Andrews,* 972 S.W.2d 729, 735 (Tex.1998) ("Statutes are given a construction consistent with constitutional requirements, when possible, because the legislature is presumed to have intended compliance with [the constitution]") (citation omitted); *Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App.1979) (en banc) (statutes are "vested with a presumption of validity and this Court is duty bound to construe such statutes in such a way as to uphold their constitutionality").